**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JOSE PENA,                      CASE NO. 2:06-cv-545

                                   JUDGE FROST

         Petitioner,            MAGISTRATE JUDGE KEMP

v.

DEBORAH TIMMERMAN-COOPER, Warden,

         Respondent.

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. Petitioner's unopposed October 5, 2006, motion to amend the petition to include additional claims, Doc. No. 8, is **GRANTED.** Petitioner's October 5, 2006, request to proceed *in forma pauperis* is denied as moot, as the $5.00 filing fee has already been paid. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** without prejudice as unexhausted.

## I. FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Defendant-appellant, Jose B. Pena, was indicted by a Franklin County Grand Jury on four counts, including: (1) trafficking in cocaine with a major drug offender specification, in that at least one kilogram of cocaine was prepared for shipment, in violation of R.C. 2925.03 and 2941.1410; (2) possession of the same cocaine in an amount equal to or exceeding one kilogram, and a corresponding major drug offender specification based on possession of at least 1,000 grams of cocaine, in violation of R.C. 2925.11 and 2941.1410; and (3) two counts of complicity based on the same alleged activity,

which were later dismissed by the prosecution.

Appellant filed a motion to suppress evidence and, after a hearing, the trial court overruled the motion. After a jury trial, he was found guilty of Count 1, trafficking in cocaine that was equal to or exceeding 1,000 grams, and Count 2, possession of cocaine with the amount being equal to or exceeding 1,000 grams. Appellant was sentenced to ten years on Count 1 and ten years on Count 2 with an additional ten years under the major drug offender specification. Counts 1 and 2 are to run concurrent with each other and the ten years for the major drug offender specification is to run consecutive with Counts 1 and 2.

***

Detective Michael Johnson testified at the suppression hearing that, in the afternoon of May 19, 2002, he received a tip from a confidential informant that appellant, a substantial cocaine trafficker, was receiving a big drug shipment that evening. The informant stated appellant was working with one or more Mexicans and coordinating a shipment of cocaine from Arizona. Another confidential informant told Johnson that he had purchased cocaine from appellant in the previous month. Johnson watched appellant all afternoon. At approximately midnight, appellant left his house in a silver Nissan Maxima, a rental car which had been rented by his girlfriend. Johnson lost sight of appellant, so he drove to the Interstate 270 and Roberts Road area where he believed the drug transaction was to take place. Johnson saw the Maxima in front of the Waffle House. A white semi trailer with Arizona license plates was parked behind the Waffle House and a man, later identified as Christopher Luty, was pacing nervously in front of the truck. Appellant and Rigoberto Guzman were inside the Waffle House and another police officer saw appellant on a cell phone. Appellant and Guzman got back into the Maxima and drove behind the Waffle House. By the time Johnson arrived behind the building, he saw the Maxima parked near the truck, Luty had a large suitcase and Guzman was just closing the trunk of the Maxima. Johnson believed a drug transaction had just taken place and followed the Maxima as it drove away. Johnson stopped the Maxima, which Guzman was driving. Appellant had exited the vehicle and fled on foot and was found approximately one hour later. When the police officers stopped Guzman, he was removed from the car, placed on the ground and handcuffed. Nothing

2

was found inside the trunk of the car. Johnson then ran back approximately 100 yards to the truck, knocked on the door and removed Luty from the truck. When Johnson looked inside the sleeper cab of the truck, there were 23 kilos of cocaine on the sleeper bunk. Johnson also observed a screwdriver and screws on the seat. After the truck was impounded, it was ascertained that another 9 kilos of cocaine were hidden in the ceiling. Johnson testified that it was approximately one or one and one-half minutes between the time Guzman was stopped and the time Johnson saw the cocaine in the truck. The suitcase found in the truck had a name tag containing the name of appellant's girlfriend.

The police recovered miscellaneous papers from the Maxima, including the rental car agreement and hotel receipts. On August 30, 2002, Johnson obtained a search warrant for Guzman's personal property recovered from him when he was arrested and being held at the jail. Appellant argued that the cocaine, miscellaneous papers, including the rental car agreement and hotel receipts, and the information received from Guzman's cell phone should have been excluded.

\*\*\*

In this case, several police officers testified. The police received information in the afternoon of May 19, 2002, that appellant was receiving a large shipment of cocaine from Arizona that evening. The police set up surveillance of appellant's residence and saw him driving a silver Nissan Maxima. Close to midnight, the officers observed appellant leaving his residence. They lost view of him so they traveled to the area of Interstate 270 and Roberts Road where they believed the transaction was to occur. Detective Johnson testified that he drove around the area and saw a white semi tractor trailer with Arizona license plates behind the Waffle House and a male, later identified as Christopher Luty, pacing nervously in front of it. Then the Maxima arrived and appellant and another man, later identified as Rigoberto Guzman, went inside the Waffle House. Two officers inside the Waffle House testified that appellant and Guzman appeared nervous. Appellant was using a cell phone and kept saying "okay." (Tr. Vol. III, at 91.) When he hung up the phone, he said to Guzman, "they called." (Tr. Vol. III, at 91.) The two immediately went outside. Detective Johnson testified that Guzman and appellant drove behind the building and stopped next to the semi. Johnson saw appellant and Luty next to the truck and Luty turned and put a

3

suitcase inside the truck while Guzman was closing the trunk of the Maxima. Then Guzman and appellant drove away. Johnson stopped the Maxima before it left the area but only Guzman was inside because appellant had fled the area on foot. After detaining Guzman, Johnson opened the trunk of the Maxima, expecting drugs inside, but the trunk was empty. At that point, Johnson realized the cocaine was still inside the truck so he ran back to the truck. After knocking on the truck door, Luty was pulled from the truck and Johnson did a protective sweep of the truck. Inside the sleeper cab were 23 kilos of cocaine and an additional 9 kilos were found hidden in the ceiling. Appellant was apprehended approximately one hour later found hiding in a creek bed.

Luty testified that he drove the truck from Arizona. He was first called on his cell phone by a woman but he could not understand her accent. Then a male called and gave him directions to complete the transaction at the Waffle House. He was met by appellant and Guzman, and Luty recognized appellant's voice as the one who telephoned him. Luty testified that appellant put the suitcase in the truck and was coming back in about 20 minutes after Luty loaded the suitcase. As he was doing so, the police knocked on the truck door, saw the cocaine and he was arrested. He spent a week in the same jail cell with appellant, and appellant told him his girlfriend had been the one who originally called Luty. Papers found inside the Maxima indicated the Maxima was rented

Exhibit 17 to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal.  He asserted the following assignments of error:

I. The trial court erred in overruling appellant's motion to suppress evidence in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

II. The trial court failed to adequately explain its findings in sentencing appellant to maximum and consecutive prison terms.

III. The trial court committed plain error by entering judgments of conviction and sentencing appellant to consecutive prison terms for allied offenses of similar import, in violation of R.C. 2941.25 and the Double Jeopardy Clauses of the United States and Ohio Constitutions.

4

IV. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's motion for acquittal pursuant to Crim.R. 29, as the state failed to offer sufficient evidence to prove each and every element of the charged offenses beyond a reasonable doubt. Appellant's convictions were against the manifest weight of the evidence and thereby violated the due process clause of the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution.

After his brief to this court was filed, appellant retained new counsel who filed a supplemental brief and raises the following assignments of error:

Supplement to Fourth Assignment of Error
The evidence was insufficient and the convictions were against the manifest weight of the evidence because the evidence of "possession" was unconvincing.

Fifth Assignment of Error
The trial court's misinstruction about appellant not testifying denied him the constitutional right to a fair trial.

Sixth Assignment of Error
To the extent that this court finds the error concerning the incorrect jury instruction waived due to counsel's failure to object, then appellant contends that defense counsel was ineffective for failing to lodge an objection to the instruction.

*See id.* On January 29, 2004, the state appellate court sustained petitioner's second assignment of error, but otherwise affirmed the judgment of the trial court, and remanded the case for re-sentencing. *Id.* The State filed a motion for reconsideration, which motion was denied on March 18, 2004. Exhibits 18 and 19 to Return of Writ. Petitioner apparently never filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.

On December 20, 2004, petitioner was re-sentenced to an aggregate term of twenty years incarceration. Exhibit 20 to Return of Writ. Represented by the Franklin County Public Defender,

petitioner filed a timely appeal.  He asserted the following assignments of error:

> ASSIGNMENT OF ERROR NUMBER ONE
>
> THE TRIAL COURT ERRED WHEN IT FOUND THAT THE DEFENDANT WAS A MAJOR DRUG OFFENDER AND FURTHER ERRED BY IMPOSING A TEN-YEAR SENTENCE OF IMPRISONMENT ON THIS FINDING WHEN SUCH A FINDING MUST BE MADE BY A JURY.
>
> ASSIGNMENT OF ERROR NUMBER TWO
>
> THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE CONTRARY TO LAW ON THE DEFENDANT AS A MAJOR DRUG OFFENDER.

Exhibit 27 to Return of Writ.  On November 17, 2005, the state appellate court affirmed the trial court's judgment.  *Id.*  Proceeding *pro se*, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1.  The trial court erred when it found that the appellant was a major drug offender and further erred by imposing a ten year sentence of imprisonment on this finding when such a finding must be made by a jury.  The question is can the judge and not the jury find the appellant a major drug offender and impose ten year sentence on this finding?
>
> 2.  The trial court erred when it imposed a sentence contrary to law on the appellant as a major drug offender.  The question presented: Did the trial court violate the appellant's constitutional rights when it sentenced him to a prison term based upon findings not made by a jury?
>
> 3.  The trial court erred in overruling appellant's motion to suppress evidence after appellant was arrested without probable cause.
>
> 4.  The trial court committed plain error by entering judgments of convictions and sentencing appellant to consecutive prison terms for allied offenses of similar import.

5.  The trial court erred and deprived the appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's motion for acquittal pursuant to Crim.R. 29, as the State failed to offer sufficient evidence to prove each and every element of the charged offenses beyond a reasonable doubt. Appellant's convictions were against the manifest weight of the evidence.

Exhibit 29 to Return of Writ.  On May 3, 2006, the Ohio Supreme Court accepted the appeal as to petitioner's first and second propositions of law, reversed the decision of the state appellate court, and remanded the case to the trial court for re-sentencing consistent with *State v. Foster*, 109 Ohio St.3d 1 (2005). Exhibit 31 to Return of Writ.  On June 5, 2006, the trial court re-sentenced petitioner to an aggregate term of twenty years incarceration.  Exhibit 32 to Return of Writ.  Petitioner filed a motion for reconsideration with the state trial court, asserting that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Exhibit 33 to Return of Writ.  It does not appear from the record before this Court that the trial court has issued a decision on petitioner's motion for reconsideration.  However, petitioner filed a timely appeal of his June 5, 2006, re-sentencing with the state appellate court.  Exhibit 36 to Return of Writ.  Such action apparently is still pending.

On June 6, 2006, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1.  The trial court erred in overruling petitioner's motion to suppress evidence after petitioner was arrested without probable cause.

2.  The trial court erred and denied defendant due process by overruling his motion for acquittal when the State failed to offer sufficient evidence to prove each and every element of the crime charged, and conviction was against the manifest weight of the

7

evidence.

It is the position of the respondent that these claims are time-barred under 28 U.S.C. §2244(d); alternatively, respondent argues that petitioner's claims are procedurally defaulted or unexhausted, and that the claims are not appropriate for federal habeas corpus review or without merit.  On October 5, 2006, petitioner filed a motion to amend his petition to include the following additional claims:

>  3.  The trial court erred when it found that the appellant was a major drug offender and further erred by imposing a ten year sentence of imprisonment... when such finding must be made by a jury.

>  4.  The trial court erred when it imposed a sentence contrary to law on the appellant as a major drug offender.  The question presented: Did the trial court violate the appellant's constitutional rights when it sentenced him to a prison term based upon findings not made by a jury?

*See* Doc. No. 8.

Respondent has not opposed petitioner's motion to amend his petition to include new claims. Further, since petitioner's appeal of his sentence is still pending, it does not appear that either of these claims are time-barred.  *See Mayle v. Felix*, 125 S.Ct. 2562, 2572 (2005)(prohibiting untimely amendment to habeas corpus petition unless new claims are tied to the same "core or operative facts" as timely-filed claims)(citations omitted).

## II.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, provides for a one-year statute of limitations on the filing of habeas corpus actions.  28 U.S.C. §2244(d)(1) provides:

>  (d)(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

judgment of a state court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1),(2).

Respondent argues that claims one and two are time-barred because such claims do not relate to petitioner's sentence. Therefore, according to respondent, petitioner's judgment of conviction became final as to claims one and two on March 14, 2004, when the time expired to file a timely appeal from the appellate court's January 29, 2004, decision denying such claims, but remanding the case to the trial court for re-sentencing.

In *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit held:

[T]he one-year statute of limitations begins to run on a habeas petition that challenges a resentencing judgment on the date that the resentencing judgment became final, rather than the date that the

9

> original conviction became final. *See Walker v. Crosby*, 341 F.3d 1240, 1246 (11th Cir.2003); *Hepburn v. Moore*, 215 F.3d 1208, 1209 (11th Cir.2000). The plain language of AEDPA dictates this result where the "judgment" being challenged is the resentencing judgment. See 28 U.S.C. § 2244(d)(1)(A) ("The limitation period shall run from the ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."); *cf. Flynt v. Ohio*, 451 U.S. 619, 620, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) (*per curiam*) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence.").

*Id.*; *see also Walker v. Crosby*, 341 F.3d 1240, 1245 11th Cir. 2003)(rejecting argument that statute of limitations in habeas corpus cases must be considered on a claim by claim basis); *but see Fielder v. Varner*, 379 F.3d 113, 118 (3rd Cir. 2004)(concluding that "statute of limitations set out in § 2244(d)(1) should be applied on a claim-by-claim basis"); *see also DiCenzi v. Rose*, 452 F.3d 465, 469-70 (6th Cir. 2006)(holding that statute of limitations on claim that state appellate court improperly denied a motion for delayed appeal under 28 U.S.C. §2244(d)(1)(D) begins on a different date than do those claims that relate to issues that occurred at sentencing).  In view of *Linscott v. Rose, supra*, and because petitioner raises claims regarding the constitutionality of his re-sentencing, this Court is unpersuaded by respondent's argument that this action is untimely.

## III. EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993).  If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim.  28 U.S.C. §2254(b), (c).  Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *Manning v. Alexander*,

912 F.2d 878, 881 (6th Cir. 1990). But where alternative state remedies are available to consider the same claim, exhaustion of one of these remedies is all that is necessary. A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

Because petitioner asserts in claims three and four issues regarding the constitutionality of the trial court's June 5, 2006, re-sentencing, and because such claims are still pending in the Ohio Court of Appeals, this action is unexhausted. As noted by respondent, claims one and two also appear to be unexhausted. Petitioner properly raised such claims on direct appeal; however, he never filed an appeal of the appellate court's January 29, 2004, decision rejecting claims one and two but remanding the case to the trial court for re-sentencing. Further, he still may file a motion for delayed appeal pursuant to the Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a). Petitioner did raise claims one and two on appeal to the Ohio Supreme Court from the appellate court's November 17, 2005, decision affirming the trial court's December 20, 2004, first re-sentencing; however, claims one and two raise issues that were beyond the scope of the appellate court's January 2004 remand. *See State ex rel. National Electrical Contractors Association v. Ohio Bureau of Employment Services*, 88 Ohio St.3d 577, 579 (2000)("Issues beyond the scope of a previous remand are beyond the scope of review following a return of the case from remand"), citing *State v. Gillard*, 78 Ohio St.3d 548, 549 (1997). Additionally, claims one and two were not considered by the state appellate court in its November 17, 2005, decision, and the Ohio Supreme Court will not ordinarily consider a claim of error that was neither raised nor considered by the court of appeals. *State v. Taylor*, 78 Ohio St.3d 15, 23, 676 N.E.2d 82 (1997), citing *State v. Williams*, 51

11

Case: 2:06-cv-00545-GLF-TPK Doc #: 9 Filed: 11/15/06 Page: 12 of 13 PAGEID #: 1037

Ohio St.2d 112, 364 N.E.2d 1364 (1977).

Further, because the statute of limitations has not yet begin to run, and it therefore does not appear that any attempt by petitioner to re-file the instant habeas corpus petition would necessarily be barred by the one-year statute of limitations under 28 U.S.C. §2244(d), it does not appear that a stay of proceedings pending petitioner's exhaustion state court remedies is appropriate. *See Rhines v. Weber*, 125 S.Ct. 1528, 1534 (2005); *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002).

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** without prejudice as unexhausted.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

13